**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**EVELYN J. LANE**                                                            **PLAINTIFF**

**v.**                                                    **CAUSE NO. 1:12CV381-LG-JMR**

**J.H. HAYNES ELECTRIC CO., INC.**                                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is the Motion for Summary Judgment [60] filed by

defendant J.H. Haynes Electric Company, Inc., seeking judgment as a matter of law

on plaintiff Evelyn Lane's employment discrimination claims brought pursuant to

Title VII and the Equal Pay Act.  Additionally, Haynes moves to strike statements

in three affidavits.  The issues have been fully briefed.  After due consideration of

the submissions, the Court finds that Lane has failed to show that there is a

question of material fact for the jury regarding her gender discrimination claim.  In

addition, her Equal Pay Act claim is time barred.  Accordingly, Haynes is entitled to

summary judgment.  Further, the motion to strike certain statements is denied as

moot.

BACKGROUND

According to her Complaint, Lane was employed by Haynes for fourteen

years.  She began as a journeyman wireman, and was promoted to foreman in 2011.

She was the only female foreman working on the VA project for Haynes when she

was terminated on November 10, 2011.  She alleges that although classified as a

foreman, she received pay as a journeyman and was required to pay for use of a

company vehicle, unlike male foremen.  She alleges that at various times during her work as a foreman she received pay that was not equal to certain male journeymen wiremen and/or foremen.  She was informed that her termination was due to a reduction in force, but she alleges that she was the only foreman terminated.  She alleges that other, male, foremen – some with less seniority – were allowed to take a demotion and/or transfer to other job sites.

Haynes describes the relationship between itself and its union electricians, such as Lane, in its summary judgment brief.  As Lane does not object that the description is incorrect, the Court will include it here to aid in understanding Lane's claims.

When Haynes needs electricians, it notifies the Union that it is in need of electricians and the Union then notifies its members of a "call out." If a Union member is not working and desires to go to work for Haynes, the Union member reports to the Union hall for a referral.  An electrician is eligible for a referral if he is not currently working and has signed the "out-of-work" book that is maintained by the Union's business agent, Mr. Curtis Murphy.  When the electricians call in or appear at the Union hall for the referral to the contractor, the electricians who have been out of work the longest period of time are given priority for the referral and are typically then referred to the contractor.  However, pursuant to the terms of the Agreement, the contractor has the right to refuse a referral from the Union.  If that occurs, the electrician is returned to the Union hall and maintains his or her placement on the "out-of-work" book that is maintained by Mr. Murphy.  A

contractor is also allowed to call a specific electrician to come to work for the contractor.  In that case, the electrician is guaranteed work for at least six months and is automatically entitled to the foreman wage rate for the six month duration.

Local 903 electricians can work outside of Local 903's jurisdiction and in other states if they desire to do so.  If a Local 903 electrician goes to work in another jurisdiction or in another state, the electrician will maintain his or her position on Mr. Murphy's "out of work" book so that the electrician has some priority when he or she returns to work within the jurisdiction of the Local 903.

Pursuant to the established practice between the Union and Haynes, an electrician can be referred to Haynes generally as opposed to being referred to a specific project. This general referral allows Haynes to keep an electrician on its payroll and move the electrician from job to job as construction work dictates.  This system allows Haynes to have ready access to electricians when they are needed on jobs, maintain some consistency with its electrician workforce, and then to downsize its workforce when a job is completed or when there is an overall lack of work.  This system also allows an electrician who is laid off from a contractor such as Haynes to immediately place his or her name on the out-of-work book kept by Mr. Murphy and become eligible for a referral when a contractor submits a call out to the Union for electricians.

Lane testified that she has been a member of her Union - Local 903 - for fifteen or sixteen years.  (Mot. Summ. J. Ex. 3 17, ECF No. 60-7).  She began her electrician apprenticeship when she was referred to Haynes in 1998 through the

Union.  (*Id*. at 17, 29).  She was laid off in a reduction in force in her third year with Haynes.  (Id. at 30).  She was employed elsewhere for the next two years.  (*Id*. at 31).  She was laid off from that employer when she graduated from the apprenticeship program.  She then worked in non-electrician positions until she went back to Haynes before Hurricane Katrina in 2005.  (*Id*. at 40).  After Katrina, she was "in a service truck."  (*Id*.).  She was taken off the service truck "when a letter came out from Haynes saying that employees will be deducted from their paycheck for the maintenance of these trucks. . . .  The letter said something about people towing their boats or doing other things with their vehicles."  (*Id*. at 42).  She decided she would leave her service truck at the Haynes facility rather than having the maintenance fee of five dollars per week deducted from her paycheck.  (*Id*. at 42, 44).  Lane testified she was "taken off the truck" several days after that.  (*Id*. at 44).  She stated that her "belief was they took that truck away from me because I didn't want to pay for it, and I'm not even sure of that, just they took it away from me."  (*Id*. at 52).

Lane agreed she was paid the correct journeyman wireman's rate while she was working on the service truck.  (*Id*. at 55).  She testified that she saw Eric Campbell's check, and he was receiving Foreman's pay driving a service truck.  (*Id*. at 53).  She testified she "believe[d]" she also saw Clayton Smith's check one time, and he was also receiving foreman's pay driving a service truck.  (*Id*. at 54).  She heard from others about other men driving a service truck who received a foreman's

wage.  When Lane spoke to Casey Weaver, Haynes' chief of operations, about the pay disparity, he simply asked her how long she had worked for Haynes.  "I said, what?  I guess about ten years.  And that was it.  He didn't say anything else, so I said oh." (*Id*. at 56).  Lane testified that not all of the male service truck drivers had been working there longer than she had.  She did not file a grievance with the Union, because she "went to the union prior and explained about the truck.  And that's when the business agent told me, [t]hey can pay you what they want." (*Id*. at 56-57).

Haynes moved Lane to working on projects in buildings.  She testified that after losing her truck, she was not paid any differently from the men who were performing similar work. (*Id*. at 59).  She was offered a foreman position in January 2011, and continued in that position until she was laid off in November.  (*Id*. at 65).

Lane testified that she "felt they were laying me off because I was female and because this was, you know, the boys' club.  I mean, they kept those guys, transferred them, kept some of them, you know." (*Id*. at 67).  She was not told she was being laid off because she was a woman, but had "been told by several journeymen that – not only people at Haynes, but Doleac, don't want women and don't believe they should be on the job." (*Id*. at 69).  In addition to the evidence concerning her wages, she listed as evidence of discrimination: being the only woman on the job; not being given the opportunities that the men on the job were given; and being "the only woman foreman that Pat came and intervened and

undermined."[1]  (*Id.* at 106).

After she was laid off, she signed the out of work book.  She was called shortly after, for a job in Jackson, Mississippi, which she rejected.  (*Id.* at 75-76).  She was also called for a job with Fluor, which she accepted and was employed with at the time of her deposition.  (*Id.* at 75).[2]

The Vice President of Haynes, Jay Haynes, testified that he did not recall when and where the final layoff decision was made concerning Lane.

> I would say initially it was done in the [November 10, 2011] meeting and from the job site.  If there was [sic] any changes to be made, they were made from the job site, but yet called back to the office just to let anybody know of the changes.  I don't recall if it was ever – at which point in time it was decided.

(Pl. Resp. Ex. E 52, ECF No. 64-5).  Haynes had several prior rounds of layoffs from the VA project over the course of a few weeks, and after the round involving Lane, there were only five or six people left on the job.  (*Id.* at 51, 56).  Of the workers Haynes kept on that particular project, Jay testified,

> I mean, gender aside, when it came down to we had some work left to do, and we had to decide who we felt was better to perform that job, that's who we went with.  That's who we chose. . . . Kenny Woodward was a better electrician.  That's it.  I mean, when it came down to it, we had to keep what we felt was the better of the electricians.

---

[1]  This last statement is not developed in the briefs or evidence.

[2]  Lane also submitted an affidavit, which Haynes has objected to in part. The Court has not referred to the statements in the affidavit, because they are generally repetitive of Lane's deposition testimony, or they concern issues that are not adjudicated.  The motion to strike will be denied as moot in regard to Lane's affidavit.

(*Id.* at 73).  As to the workers Haynes transferred off of the project rather than laying them off, Jay was asked, "Are you telling me that every single person that worked on the VA that was transferred was a better employee than Evelyn Lane? He responded: "Yes, I believe that every person that transferred off that job is a better employee, yes."  (*Id.* at 95).

Jay Haynes also provided an affidavit setting out the progression of layoffs from the VA project.[3]

> At the VA job site, Ms. Lane was one of five Foreman (the only female). . . .  All five Foreman at the VA project were paid the same wage rate as dictated by the Agreement.
>
> As electrical construction work was completed on the VA project, electricians were gradually laid off. . . .  Foremen stayed on until their respective crews reached a certain . . . ratio . . . at which point the Foreman was either laid off from work, reclassified to a Journeyman Wireman and then laid off, or transferred to another Haynes' project. At the VA project, Haynes first laid off Darryl Dye on July 29, 2011,

---

[3]  Lane contends that the Court should disregard Jay Haynes' affidavit because it contradicts his deposition testimony regarding the specifics of the decision to terminate Lane.  The Court discerns no contradiction.  Haynes testified he did not remember when and where the final decision was made.  His affidavit simply says that "various members of management, including Jay Haynes, Donna Haynes Williams, Mike Ladner and Adam Feeney, made the decision to lay-off Ms. Lane." (Def. Mot. Summ. J. Ex. 3 5-6 (¶15), ECF No. 60-3).  Lane further contends that Jay Haynes lacks credibility because he incorrectly answered an interrogatory. He stated that only Lane had made any sort of claim of gender discrimination, but Lane discovered another woman had filed a union grievance following Haynes' failure to hire her.  The Court's role at this stage of the proceedings is to determine if there is a question of material fact for the jury.  It must not weigh evidence or make credibility choices.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). Furthermore, Haynes' incorrect statement concerns a matter that is peripheral to the issues that must be resolved in this case.  For these reasons, the Court will consider the objected-to statements in Haynes' affidavit to be competent summary judgment evidence.

> due to a reduction in force.  Another male Foreman, Randy Deen, was
> initially reclassified to a Journeyman Wireman, but on October 21,
> 2011, approximately one week after his reclassification, Haynes laid
> him off due to a reduction in force.  Haynes then laid off Chris
> Carpenter on November 2, 2011, also due to a reduction in force. . . . Of
> the five Foreman who were working at the VA project, three male
> Foreman were laid off before Ms. Lane was laid off.

(Def. Mot. Summ. J. Ex. 3 4 (¶11-12), ECF No. 60-3).  Haynes decided not to

reclassify or transfer Lane to another project because she was not the best, most

versatile, and most productive electrician, and Haynes was already staffed with

electricians on the projects that were ongoing at the time of the November 2011

layoff.  (*Id.* at 5 (¶15)).

In regard to the wages paid to Lane while she was assigned to a service

truck, Jay Haynes acknowledged that Haynes paid certain male electricians who

worked on a service truck a Foreman rate instead of a journeyman wireman rate.

(*Id.* at 2 (¶6)).  He states that Haynes made these decisions based on factors other

than gender.  For example, Danny Verzwyvelt received a foreman's pay rate

because he is Haynes' lead electrician and works directly under Haynes' service

manager.  (*Id.*)  Others, like Tim Critzer and Chad Lott, were long-time foremen

who were between jobs and handling service work in the interim.  (*Id.* at 3 (¶6)).

While working on the service truck, their classification was not changed to

journeyman wireman.  (*Id.*).

### LEGAL STANDARD FOR EMPLOYMENT DISCRIMINATION CLAIMS

Title VII provides that it is "an unlawful employment practice for an

employer . . . to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." 42 U.S.C. § 2000e-2(a)(1). "In the context of Title VII litigation, we recognize two types of discrimination claims: disparate treatment and disparate impact." *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000). "Disparate treatment refers to deliberate discrimination in the terms or conditions of employment, . . . on account of race, national origin, or gender." *Id.* Plaintiff's claim here is one of disparate treatment. Accordingly, "liability depends on whether the protected trait . . . actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000).

In order to help district courts analyze summary judgment motions in employment discrimination cases, the Supreme Court has established a burden-shifting scheme for evaluating claims relying on circumstantial evidence. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802-05 (1973); *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005). The plaintiff must first demonstrate a prima facie case of discrimination. If the plaintiff meets her burden, the defendant must rebut this case by producing a legitimate, nondiscriminatory reason for its actions. If the defendant meets its burden, the presumption disappears, and the issue becomes discrimination *vel non*. *See Reeves*, 530 U.S. at 142. The plaintiff can establish disparate treatment by showing that the defendant's explanation for the employment action is a pretext for discrimination. *Id.* at 143. In other words, the plaintiff can meet her burden by showing that "the employer's proffered

explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Still, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253.

Because employment discrimination claims "involve nebulous questions of motivation and intent," summary judgment is generally an inappropriate tool for resolving these cases. *Thornbrough v. Columbus & Greenville R.R.Co.*, 760 F.2d 633, 640-41 (5th Cir. 1985) (citations omitted). However, if the plaintiff fails to establish a *prima facie* case, or if defendant presents strong evidence of a legitimate, nondiscriminatory reason for its actions, and the plaintiff is unable to counter with additional evidence of pretext, summary judgment may be properly granted. *Bauer v. Albermarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999); *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1295 (5th Cir. 1994).

### 1. Plaintiff's Prima Facie Case of Gender Discrimination

A claimant is required to show the following in order to make out a prima facie case of discrimination under Title VII: (1) that she is within the protected class; (2) that she is qualified for the position; (3) that she suffered an adverse employment decision; and (4) in the case of disparate treatment, that she was treated less favorably than a similarly situated employee. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 512–13 (5th Cir. 2001) (citations omitted). "Although the precise elements of this showing will vary depending on

the circumstances, the plaintiff's burden at this stage of the case is not onerous."
*Reed v. Neopost USA, Inc.,* 701 F.3d 434, 439 (5th Cir. 2012) (citation and internal
quotation marks omitted).

Haynes argues that Lane cannot establish the fourth element, because three
male foreman were laid off before she was.  However, as between the last two
foremen, the male was retained by Haynes.  This is sufficient to raise the
presumption of discrimination.  *Brown v. Miss. State Senate*, No. 13-60206, 2013
WL 6407674 at *3 (5th Cir. Dec. 9, 2013).  Therefore, the burden of production
shifts to Haynes to produce a legitimate, nondiscriminatory justification for its
actions.

### 2.  Defendant's Reasons for Termination

Haynes has presented evidence that it laid Lane off because the project she
was employed for was ending, Haynes was gradually eliminating its workforce for
that project, and it chose not to transfer Lane to its other projects because it
preferred to continue to employ other electricians it believed were superior to Lane.
A reduction in force is a legitimate, nondiscriminatory reason for discharge.  *EEOC
v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996).

### 3.  Plaintiff's Evidence of Pretext

Lane argues that Haynes' reasons for terminating her are unworthy of
credence because 1) there were no complaints about her job performance - she was
considered competent at her job; and 2) the Union Agreement did not allow a
supervisory employee to be terminated, and therefore the failure to demote Lane to

Journeyman prior to her termination was a violation of the Agreement.  An argument that also appears to be an attempt to show pretext is Lane's assertion that another female made a charge of sex discrimination against Haynes, and therefore Haynes has a pattern and practice of discriminating against females.[4]

The Fifth Circuit has noted that "[i]n the context of a reduction in force, . . . the fact that an employee is qualified for his job is less relevant – some employees may have to be let go despite competent performance." *Tex. Instruments*, 100 F.3d at 1181; *see also Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1083 (11th Cir. 1990) (During a reduction-in-force, "competent employees who in more prosperous times would continue and flourish at a company may nevertheless have to be fired.").  Federal courts will not second-guess the business judgment of employers. *See Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988). (quotation marks omitted).  Whether an employment decision was "prudent or fair" is irrelevant, *see Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir. 1999), because management does not have to make proper decisions, only non-discriminatory ones.  *See Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).  Lane's evidence that she was considered competent at her job does not meet her burden of producing substantial evidence of pretext.

In regard to Haynes' purported violation of the Union Agreement, Lane has

---

[4]  To the extent Lane alleges that statements regarding the experiences of other women shows a pattern or practice of discrimination, this method of proof is not available in private, non-class action lawsuits.  *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355 (5th Cir. 2001).

produced deposition testimony from Adam Feeney, the project manager for the VA project.  From the brief excerpt of his deposition testimony provided, it appears that he was given a section of the Agreement to read and opine whether it would be a violation "if you terminated a supervisory employee without reducing them down to a journeyman wireman?" (Pl. Resp. Ex. V 35, ECF No. 64-22).  He responded "Yes, And I think it ought to – our working agreement kind of ought to be cleared up. But, yeah." (*Id*.).  He did not know what category Lane would fall under as a Foreman.  (*Id*.).

Haynes has provided contrary evidence that it did not violate the Agreement. According to Curtis Murphy, the business manager of the Local 903, the relevant section of the Agreement did not apply to Haynes.  "It doesn't – it doesn't apply to Doleac, Haynes, Sharp, unless they're bringing in out-of-state worker supervision." (Def. Reply Ex. 21 76-77, ECF No. 67-4).

Setting aside this difference of opinion regarding the meaning of the Union Agreement language, the Fifth Circuit has observed that an employer's "disregard of its own hiring system does not of itself conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual." *Risher v. Aldridge,* 889 F.2d 592, 597 (5th Cir. 1989); *see also, Moore v. Eli Lilly & Co.,* 990 F.2d 812, 819 (5th Cir.), *cert. denied,* 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).  In analyzing an age discrimination claim, the Fifth Circuit stated in *Moore* that,

[p]roof that an employer did not follow correct or standard procedures

> in the termination or demotion of an employee may well serve as the
> basis for a wrongful discharge action under state law. As we have
> stated, however, the ADEA was not created to redress wrongful
> discharge simply because the terminated worker was over the age of
> forty.  A discharge may well be unfair or even unlawful and yet not be
> evidence of age bias under the ADEA. To make out an ADEA claim,
> the plaintiff must establish some nexus between the employment
> actions taken by the employer and the employee's age. [A] bald
> assertion that one exists ... simply will not suffice.

*Moore*, 990 F.2d at 819 (*citing Bienkowski,* 851 F.2d at 1508 n. 6).  This Title VII

gender discrimination claim requires a similar nexus between Lane's termination

and her gender.  That Haynes might have violated the Agreement by terminating

her as a Foreman rather than demoting her first does not provide that nexus.

Lane's evidence that Haynes violated the Agreement does not meet her burden of

producing substantial evidence of pretext.

Lane also attempts to show pretext through the affidavit of another female

electrician.  Kelly Deen states in an affidavit that she "believe[s] my referral from

the Local 903 was turned down by Haynes and Casey Weaver because I am a

woman." (Pl. Resp. Ex. D 1, ECF No. 64-4).  She filed a grievance regarding

Haynes' failure to hire her, and at the hearing Jay Haynes told her "we don't have

to hire you and we don't have to have a reason."  (*Id*. at 2).  Deen states that she is

aware of two other female members of the Local 903 (one of whom is Lane) who

"were not given an equal opportunity for employment and suffered unfair treatment

while employed with Haynes.  Both women alleged that Haynes discriminated

against them on the basis of their gender."  (*Id*. at 2).  Deen "believe[s] Evelyn Lane

was discriminated on the basis of her gender when Haynes did not give her the

same opportunity that was granted to similarly-situated male employees." (*Id.*).
She "aver[s] that Haynes has a pattern and practice of discrimination against
women from the Local 903 because three out of the six women, including myself, in
the Local 903 have alleged unfair treatment and gender discrimination against
Haynes." (*Id.*). Her husband, Randy Deen, provided a similar affidavit. (Pl. Resp.
Ex. J, ECF No. 64-11).

The Deens' statements attest to their subjective opinions that discrimination
was a factor in Haynes' decisions regarding the employment of three females,
including Lane. However, belief alone cannot constitute summary judgment
evidence. *See Britt v. Grocers Supply Co., Inc.,* 978 F.2d 1441, 1451 (5th Cir. 1992);
*Little v. Republic Refining Co.,* 924 F.2d 93, 96 (5th Cir. 1991). "It is more than
well-settled that an employee's subjective belief that he suffered an adverse
employment action as a result of discrimination, without more, is not enough to
survive a summary judgment motion, in the face of proof showing an adequate
nondiscriminatory reason." *Douglass v. United Servs. Auto.* Ass'n, 79 F.3d 1415,
1430 (5th Cir. 1996) (citations omitted).[5]

Lane offers no competent evidence to substantiate her allegations of
discrimination. Evidence of general talk and stray comments about Haynes'
attitude toward women, and the fact that Lane is female and was terminated

---

[5] Haynes moved to strike statements from the Deen affidavits, but as the
Court has considered the statements and found them inadequate as summary
judgment evidence, the motion will be denied as moot.

amidst a work slowdown, is not sufficient.  There is no competent evidence of words or actions of any Haynes employee that would allow a jury to find discriminatory animus.  Lane cannot merely rely on her subjective belief that discrimination has occurred to demonstrate pretext.  Review of the summary judgment evidence presented, viewed in the light most favorable to Lane, leads the Court to conclude that there is no legitimate fact issue as to discriminatory intent with respect to Lane's termination.  Accordingly, Haynes is entitled to summary judgment.

EQUAL COMPENSATION CLAIMS

Contending that it is unclear whether Lane has made an equal pay claim under Title VII and the Equal Pay Act, or just the Equal Pay Act, Haynes argues the claim should be dismissed in any event.  Haynes argues that Lane's equal pay claim, if made under Title VII, is not cognizable because she failed to make a compensation discrimination charge to the EEOC and therefore failed to exhaust her administrative remedies.  Haynes contends the Equal Pay Act claim is time barred.  Lane alleged only that Haynes' conduct violated the Equal Pay Act, 29 U.S.C. § [2]06(d)(1). (Compl. 5, ECF No. 1).

**1. Discrimination in Pay Under Title VII**

Title VII provides in pertinent part that it is "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation ... because of such individual's ... sex".  42 U.S.C. § 2000e–2(a)(1).  The scope of a judicial complaint under Title VII is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of

discrimination.  *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.

1970); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001).  In her Charge

of Discrimination, Lane checked the box indicating she was claiming discrimination

based on her sex, and stated:

> I have been employed with the Respondent off and on since 1997.  The
> IBEW Local 903 union has referred me for employment with the
> Respondent as a Journeyman Wireman.  In January 2011, I became a
> Foreman.  I was laid off from my position effective November 10, 2011.
>
> I was working for the Respondent at the VA Medical Center.  It was
> my understanding the job was to last until April 2012.  Approximately
> two weeks prior to my layoff, the other Foreman (male) was allowed to
> be reassigned to the Journeyman Wireman position.  On November 10,
> 2011, I received a notice of separation stating I was laid off/discharged
> due to lack of work.  I was not offered a transfer to another job site, nor
> was I allowed to be reassigned as a Journeyman Wireman.
>
> I believe I was discriminated against in violation of Title VII of the
> Civil Rights Act of 1964, as amended.  I believe I was discriminated
> against because of my gender, female, in that the males were
> transferred to other job sites, and allowed to return to their previous
> position of Journeyman Wireman.

(Def. Mot. Summ. J. Ex. 1 2, ECF No. 60-1).  Although Lane is not limited to the

exact charge brought to the EEOC, *Young v. City of Houston*, 906 F.2d 177, 179 (5th

Cir. 1990), a discriminatory compensation claim cannot reasonably be expected to

grow out of her EEOC charge that she was discriminated against because of her

gender when she was terminated.  Thus, even if Lane alleged a Title VII

discriminatory compensation claim, she failed to exhaust her administrative

remedies, and therefore the Court may not consider it.

-17-

### 2.  The Equal Pay Act

The Court next considers whether Lane's Equal Pay Act claim is time barred. The Equal Pay Act is part of the Fair Labor Standards Act.  29 U.S.C. § 206(d). Claims under the FLSA, including Equal Pay Act claims, must be filed within two years after the cause of action accrues, or within three years if the alleged violation was "willful." 29 U.S.C. § 255.

Haynes argues that Lane can seek back pay remedies under the EPA for actions occurring no later than December 3, 2010, because she filed her lawsuit on December 3, 2012.  But because Lane admits she was taken off the service truck on September 13, 2010, and that she was paid properly after that time, all of her back pay claims under the EPA are time barred.

Lane agrees that the relevant time period is from April 12, 2009 through September 12, 2010.  (Pl. Resp.19, ECF No. 63).   She does not argue that her EPA claim, standing alone, is not time barred.  She contends that the continuing violations doctrine should apply to her EPA claim, because together with her later-accruing gender discrimination claim (beginning November 10, 2011), these claims describe a series of discrete acts that are part and parcel of Haynes' unlawful employment practices.  (*Id.* at 22).  She also makes arguments that go to the merits of her EPA claim.  She contends that Haynes cannot rely on the Union Agreement as a defense to her EPA claim because it perpetuates prior pay discrimination, and she discusses the pay of her comparators to show that she was paid less for the same work.

Initially, the Court finds that the appropriate statute of limitations is two years.  Lane makes no allegation of a willful violation of the EPA in her Complaint, nor has she provided any evidence of the same.  *See McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988).  Therefore, her EPA claim expired two years from the last purported violation, on September 12, 2010.  As her Complaint was filed slightly more than two months after the two year period, the EPA claim is barred by the statute of limitations.

Finally, Lane's contention that the continuing violations doctrine should apply is unavailing.  As the Court found earlier, Lane's claim, that her termination was discriminatory is separate from her claim that she was paid less for equal work.  Complaints of "separate and varied acts and decisions that occurred at different times and discretely applied in different ways . . . are not entitled to the shelter of the continuing violation doctrine."  *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003).  Accordingly, Lane's Equal Pay Act claim is barred by the two year statute of limitations.  It is not necessary to address Lane's arguments concerning the merits of the claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion [60] for Summary Judgment filed by defendant J.H. Haynes Electric Company, Inc., is **GRANTED**.  Plaintiff's claims are **DISMISSED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Motion [66] to Strike Various Statements in the Declarations of Evelyn J. Lane, Randy J. Deen and Kelly J. Deen, is **DENIED AS MOOT**.

**SO ORDERED AND ADJUDGED** this the 23rd day of January, 2014.

_s/ Louis Guirola, Jr._
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE